John T. Casey, J.
On June 13, 1972 an election for á three-year term to the Board of Education of the Hicksville Union Free School District No. 17 was held to fill the position that a Harry Kershen then occupied and which was about to expire. The legal notice that announced such election and other busi *70 ness designated seven election districts in which qualified voters could cast their ballots between 10:00 a.m. and 10:00 p.m. This notice also announced that the vote upon the appropriation of necessary funds and expenditures for the 1972-73 school year would be held in the school houses therein designated within the seven election districts. For the position in question three candidates contended, the candidate Bruno receiving an admitted 38.4% of the valid ballots cast, the candidate Loiacono receiving 32.2% and the candidate Kershen receiving 29.3%. As the result of this election the candidate Bruno was declared the winner.
The petitioner Loiacono objects and argues that section 2034 (subd. 7, par. a) of the Education Law requires the successful candidate to receive at least 40% plurality of the votes cast and, therefore, urges that a new election is required. He appealed to the State Commissioner of Education, whose determination was that “ when the election of school board members occurs as part of the annual meeting of the district on the day fixed by law therefor, then a plurality consisting of no less than 40% of the votes cast for that specific office is required to elect an individual to a seat on the board of education. However, where the election is held over the hours separately but on the same day as, or on the Wednesday next following, the date of the annual meeting, then a simple plurality is sufficient to elect a board member (citing Education Law Section 2013, Subdiv. 2, par. a and Subdiv. 4, par. a; Section 2034, Subdiv. 7, par. b) ”. The petitioner’s appeal was, therefore, dismissed.
Section 2013 (subd. 2, par. a) of the Education Law pertinently provides that “ the board of education may upon its own motion determine that the election of the members of the board of education shall be held separately on the same day designated by law for holding the annual meeting”. It is undisputed that the board in this case made no such determination. Subdivision 2 (par. 2) of that same section provides: ‘ ‘ Until such determination shall he changed, such election shall be held on the same day as the annual meeting, during at least six consecutive hours between the hours of seven o’clock in the forenoon and the opening of the meeting, as determined by resolution of the board of education, at the principal schoolhouse in the district, or at such other suitable place as the board of education may designate ”.
The petitioner contends that the Commissioner’s determination dismissing his appeal is purely arbitrary in that it mis *71 interpreted those pertinent statutes. The petitioner argues that because the board of education did not determine that the election of members be held separately on the same day designated by law for holding the annual meeting, the election that was held was not “ separately on the day of the annual meeting ” as provided in section 2034 (subd. 7, par. b) so as to constitute an exception to section 2034 (subd. 7, par. a) which requires 40% plurality for a successful candidate except as provided in section 2034 (subd. 7, par. b) and only if the election falls within this exception would permit a simple plurality to elect a candidate. In brief, the petitioner urges there can be no “ separate election on the same day as the annual meeting” so as to be an exception to section 2034 (subd. 7, par. a), according to .section 2034 (subd. 7, par. b) unless the board makes such a determination as provided in section 2013 (subd. 2, par. a) and then in the manner prescribed in section 2013 (subd. 2, par. b).
The difficulty with the petitioner’s argument is that the provisions of section 2034 and of section 2013 are not made to depend on each other by any statutory language of the Legislature. The provisions of section 2013 (subd. 2, par. a) are permissive only since that statute says that the board of education “may” determine to hold the election separate from the annual meeting. That statute does not say that the board “must” make such a determination in order to have an election “separate” from the annual meeting.
The same argument is true when we consider the provision of section 2034 (subd. 7, par. b) as the exception to section 2034 (subd. 7, par. a) which requires the 40% plurality. Section 2034 (subd. 7, par. b) simply says that if the election is held “separately on the day of the annual meeting”. It does not say “in accordance with the provisions of Section 2013 or that the determination of the board of education under Section 2013 (a) is necessary to hold a separate meeting ”. Therefore, the issue clearly is, whether there can be an election separately on the same day as the annual meeting without prior board determination or whether the election that was held here can be an election ‘ ‘ separate ’ ’ from the annual meeting, strictly because of the maimer in which it was conducted.
The election herein was, in fact, held separately on the same day as the annual meeting and, as the Commissioner of Education determined, in substantial compliance with the provisions of section 2013 (subd. 2, par. b) which prescribes *72 the method of conducting such election, although it did lack a prior determination by the board of education under section 2013 (subd. 2, par. a) that it be so held.
It makes sense to conclude that the reason for requiring, in fact changing, section 2034 (subd. 7, par. a) to require a 40% plurality was strictly for those meetings that were held at the same time and place and as part and parcel of the annual meeting. Without such requirement, if many candidates were nominated at such a meeting a simple plurality could be, for example, 12% of the vote — hardly an acclamation by the electorate. However, since all were assembled together the votes could easily be changed back and forth, so the requirement of a minimum of 40% plurality would deter, if not prevent, vote rigging among contestants and assure that any person elected would have a substantial number of votes cast in his favor,
When the election is held separately from the meeting and the votes are cast on máchines, even though on the same day and over the same hours, then the reason for a 40% plurality to be a winning candidate is unnecessary. The Commissioner of Education basically concluded as much on this appeal and essentially determined that a separate election could be held on the same day as the annual meeting without such a prior determination by the board of education under section 2013 (subd. 2, par. a). As the Commissioner of Education, his interpretation of the statutes under his jurisdiction is entitled to great weight and because his interpretation does no violence to the pertinent statutes, as I have outlined above, his decision is not purely arbitrary and must be sustained.
Accordingly, the petition is dismissed.